[Cite as *State v. Hubbard*, 2020-Ohio-856.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-05-086 |
| | : | O P I N I O N |
| - vs - | | 3/9/2020 |
| | : | |
| MIQUAN D. HUBBARD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-09-1562


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Michele Temmel, 6 South Second Street, #305, Hamilton, Ohio 45011, for appellant



**HENDRICKSON, P.J.**

{¶ 1} Appellant, Miquan D. Hubbard, appeals from his conviction in the Butler County Court of Common Pleas for murder, arguing that a recently enacted law requiring him to register with a violent offender database annually for ten years is unconstitutional as it violates the prohibition on retroactive legislation set forth in Article II, Section 28 of the Ohio Constitution. For the reasons set forth below, we conclude that the registration requirement

is remedial and not substantive in nature and therefore is not unconstitutionally retroactive.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 10, 2018, appellant was indicted on one count of murder in violation of R.C. 2903.02(A) and one count of murder in violation of R.C. 2903.02(B), both unclassified felonies, two counts of felonious assault in violation of R.C. 2903.11(A)(1) and two counts of felonious assault in violation of R.C. 2903.11(A)(2), felonies of the second degree, and one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), a felony of the first degree. Each count was accompanied by a firearm specification as set forth in R.C. 2941.145. The charges arose out of allegations that on August 29, 2018, while in the area of South Front Street in Hamilton, Butler County, Ohio appellant, who was aiding and abetting his accomplice, Kameron Tunstall, discharged a firearm multiple times across the street towards a group of individuals. Appellant wounded Datorion Burns and killed Jaraius Gilbert, Jr.

{¶ 3} Appellant initially pled not guilty to the charged offenses. However, On March 7, 2019, following plea negotiations, appellant pled guilty to murder in violation of R.C. 2903.02(B) and an amended firearm specification. In exchange for appellant's guilty plea, the state dismissed the remaining charges. As part of the plea bargain, appellant was required to testify at Tunstall's trial, and, if he committed perjury, the plea agreement would be voided.

{¶ 4} Following a Crim.R. 11(C) colloquy, the trial court accepted appellant's guilty plea, found him guilty, and set the matter for sentencing. On April 30, 2019, appellant appeared before the court to be sentenced. At that time, the trial court advised appellant of recently enacted Senate Bill 231 (S.B. 231), known as "Sierah's Law," which became effective on March 20, 2019. *See* 2018 Am.Sub.S.B. No. 231. Sierah's Law, codified in sections 2903.41 through 2903.44 of the Revised Code, creates a violent offender database,

sets forth a rebuttable presumption that violent offenders, as defined in R.C. 2903.41(A), register in person annually for ten years with the sheriff of the county in which they reside, and subjects violent offenders to criminal prosecution for failing to register.

{¶ 5} The trial court informed appellant that since he pled guilty to murder, a presumption existed that he would be required to enroll in the violent offender database. The court explained appellant could file a motion to rebut that presumption and the burden would be on appellant to prove by a preponderance of the evidence that he was not the principal offender in the commission of the murder. Appellant elected not to challenge the presumption of enrollment into the violent offender database, but he objected to application of Sierah's Law on the basis that S.B. 231 was "punitive and not remedial; and therefore, * * * unconstitutional to retroactively apply [it]." The trial court overruled appellant's objection, noting that although the commission of the offense and appellant's plea took place prior to the effective date of S.B. 231, the language of R.C. 2903.41 indicated the violent offender statutes were applicable to appellant. The court further found a presumption in favor of the constitutionality of Sierah's Law applied and overruled appellant's constitutional challenge.

{¶ 6} The trial court proceeded to sentence appellant to 15 years to life in prison for murder and to a mandatory one-year sentence on the firearm specification, to be served consecutively for a total prison term of 16 years to life in prison. The trial court informed appellant of his duties to register as a violent offender under S.B. 231 and had him sign a Notice of Duties to Register as a Violent Offender (R.C. 2903.41, et seq.) form. This form was subsequently filed with the court.

{¶ 7} Appellant now appeals from his sentence, raising two assignments of error.[1] As they are related, we will address his assignments of error together.

---

1. Appellant set forth three assignments of error for review in his appellate brief, but voluntarily withdrew his third assignment of error at oral argument.

## II. ANALYSIS

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT IMPROPERLY PRESUMED THAT R.C. §2903.41-§2903.44 IS CONSTITUTIONAL.

{¶ 10} Assignment of Error No. 2:

{¶ 11} MR. HUBBARD'S SENTENCE WAS CONTRARY TO LAW.

{¶ 12} In his first assignment of error, appellant argues the violent offender registration scheme set forth in R.C. 2903.41 through 2903.44 is unconstitutional as it violates Section 28, Article II of the Ohio Constitution, which prohibits retroactive laws. Specifically, appellant contends that the violent-offender enrollment statutes are unconstitutionally retroactive as they are substantive, rather than remedial, in nature. In his second assignment of error, appellant argues his sentence is contrary to law as the trial court "erroneously determined that [he] was required to register with the violent offender database." We begin our analysis of these issues by examining the recently enacted statutes.

### A. Statutory Provisions Creating a Violent Offender Database

{¶ 13} S.B. 231 "provides for the establishment and operation by the Bureau of Criminal Identification and Investigation (BCII) of a Violent Offender Database (VOD), [and] requires persons convicted of specified violent offenses in Ohio (violent offenders) or those convicted of a comparable offense in another state (out-of-state violent offenders) who become aware of the Database to enroll in the Database." Ohio Legislative Service Commission, Bill Analysis of S.B. 231, as introduced in the Senate on November 14, 2017, at 1. The statutory provisions set forth in R.C. 2903.41 through 2903.44 identify the enrollment requirements and persons subject to those requirements for the violent offender database, provide notice of the manner in which the presumption of enrollment may be rebutted, set forth guidelines for notifying violent offenders of the duty to enroll in the database and for

maintaining enrollment, and impose penalties for violent offenders' failure to enroll in the database.

{¶ 14} R.C. 2903.41 sets forth the definition of a "violent offender." A "violent offender" under division (A)(1) of the statute is a "[a] person who on or after the effective date" of the statute is convicted of or pleads guilty to aggravated murder, murder, voluntary manslaughter, kidnapping, abduction as a second-degree felony, or is convicted or pleads guilty to any attempt to commit, conspiracy to commit, or complicity in committing any of the previously identified offenses. R.C. 2903.41(A)(1)(a) and (b). As relevant to the case before us, a "violent offender" under division (A)(2) of the statute is

> [a] person who on the effective date of this section has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense.

R.C. 2903.41(A)(2).[2]

{¶ 15} Pursuant to R.C. 2903.42(A)(1), it is presumed that each person classified as a violent offender "shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database." The presumption is rebuttable, and the violent offender must be informed of his or her right to file a motion to rebut the presumption by either the trial court before sentencing, if classified as a violent offender under division (A)(1) of R.C. 2903.41, or, if classified as a violent

---

2. R.C. 2903.41(C) provides that an "out-of-state violent offender" is "a person who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a violation of any existing or former municipal ordinance or law of another state or the United States, or any existing or former law applicable in a military court or in an Indian tribal court, that is or was substantially equivalent to any offense listed in division (A)(1) of this section." A "qualifying out-of-state violent offender" is an "out-of-state violent offender who is aware of the existence of the violent offender database." R.C. 2903.41(D). The provisions governing qualifying out-of-state offenders are set forth in R.C. 2903.421. As appellant is not an "out-of-state violent offender," we need not address the requirements of R.C. 2903.421.

offender under division (A)(2) of R.C. 2903.41, by the official in charge of the jail or state correctional institution that the offender is imprisoned in prior to the offender being released from confinement.  R.C. 2903.42(A)(1)(a) and (b).

{¶ 16} An offender wishing to rebut the presumption of enrollment in the violent offender database must file a motion with the court prior to or at the time of sentencing if the offender was classified as a violent offender under division (A)(1) of R.C. 2903.41, or, if classified a violent offender under division (A)(2) of R.C. 2903.41, with the court that sentenced the offender prior to the offender's release from confinement.  R.C. 2903.42(A)(2)(a) and (b).  The motion must assert that the offender was not the principal offender in the commission of the offense and must request that the court not require enrollment in the violent offender database or participation in database duties.  Id.

{¶ 17} The burden is on the offender to prove, by a preponderance of the evidence, that the offender was not the principal offender in the commission of the offense that led to the violent offender classification.  R.C. 2903.42(A)(4).  However, even if the offender meets this burden and the presumption of enrollment is rebutted, "the trial court shall continue the hearing for the purpose of determining whether the offender, notwithstanding the rebuttal of the presumption, should be required to enroll in the violent offender database and have all VOD duties with respect to that offense."  R.C. 2903.42(A)(4)(a).  The court, in making this determination, is required to consider (1) whether the offender has any prior convictions for an offense of violence and whether the prior convictions indicate a propensity for violence; (2) the results of the offender's risk assessment; (3) the offender's degree of culpability or involvement in the offense; and (4) the public interest and safety.  R.C. 2903.42(A)(4)(a)(i)-(iv).  If, after considering these factors, the court determines that the offender should not be required to enroll in the violent offender database, the court shall issue such an order and provide a copy of the order to the prosecutor and to BCII.  R.C. 2903.42(A)(4)(a). However, if

consideration of the factors convinces the court that the offender should be required to enroll in the violent offender database and have all database duties, the court shall issue an order to that effect. *Id.*

{¶ 18} Each violent offender required to enroll in the violent offender database shall be given notice of his or her database duties and informed that those duties last for ten years after initial enrollment. R.C. 2903.42(B) and (C). "Violent offender database duties" are "the duty to enroll, duty to re enroll [sic], and a duty to provide notice of a change of address imposed on a violent offender or a qualifying out-of-state violent offender under section 2903.42, 2903.421, or 2903.44 of the Revised Code." R.C. 2903.41(H). The violent offender is required to sign a form acknowledging that the offender received and understood the provided notice. R.C. 2903.42(C). Copies of the notice and signed acknowledgement are provided to the violent offender, to the sheriff of the county in which the violent offender intends to reside, and to BCII. *Id.*

{¶ 19} Where a violent offender classified under division (A)(1) of R.C. 2903.41 has been ordered to serve a prison sentence for the offense or where an offender has been classified a violent offender under division (A)(2) of R.C. 2903.41, the offender is required to enroll in the violent offender database "within ten days after the violent offender is released from jail, workhouse, state correctional institution, or other institution." R.C. 2903.43(A)(2). The offender must enroll, and then re-enroll annually for a total of ten years, in the violent offender database in person with the sheriff of the county in which the offender resides. R.C. 2903.43(C)(1), (D).[3] The offender is required to complete and sign an enrollment form that

---

3. Generally, a violent offender's database duties terminate on the expiration of the ten-year enrollment period. R.C. 2903.43(D)(2). However, a court is permitted to extend an offender's enrollment in the database beyond ten years if the prosecutor files a motion seeking an extension and the court finds that the offender violated a term or condition of a sanction imposed under the offender's sentence or finds the offender was convicted of or pled guilty to another felony or misdemeanor offense of violence during the original enrollment period. *Id.* The enrollment period is then extended indefinitely, as are the offender's database duties, unless terminated in accordance with R.C. 2903.44. *Id.*

sets forth (1) the offender's full name and any alias the offender may have used; (2) the offender's address; (3) the offender's social security number; (4) the offender's driver's license number or state identification card number; (5) the offense for which the offender was convicted; (6) the name and address of the offender's employer; (7) the name and address of any school or university the violent offender attends; (8) a description of each vehicle the violent offender operates, as well as the vehicle identification number and license plate number for each vehicle operated; and (9) a description of any scars, tattoos, or other distinguishing marks on the offender. R.C. 2903.43(C)(2)(a)-(i). The offender must also provide finger and palm prints and annually allow his or her photograph to be taken. R.C. 2903.43(C)(3), (D)(1). If the offender moves from his or her address, the offender must notify the sheriff with whom the offender most recently enrolled of the change of address within three business days. R.C. 2903.43(E). An offender who recklessly fails to enroll, re-enroll, or notify the sheriff of a change of address is guilty of a felony of the fifth degree. R.C. 2903.43(I)(1) and (2).

{¶ 20} The violent offender database is maintained by BCII, and is only made available to federal, state, and local law enforcement officers. R.C. 2903.43(F)(2). The database is not a public record under R.C. 149.43, Ohio's public records law. *Id.*

{¶ 21} With these statutory provisions in mind, we turn to the Retroactivity Clause of the Ohio Constitution.[4]

## B. Retroactivity Clause of the Ohio Constitution

{¶ 22} Article II, Section 28 of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws * * *." Determining whether a statute's

---

4. Our analysis under Ohio's Retroactivity Clause is distinct from the analysis required under the Ex Post Facto Clause of the United States Constitution. *See State v. Caldwell*, 1st Dist. Hamilton No. C-130812, 2014-Ohio-3566, ¶ 14, citing *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583. Appellant has not claimed that the violent-offender enrollment statutes violate the Ex Post Facto Clause. Our review is, therefore, limited to the arguments appellant raised under Article II, Section 28 of the Ohio Constitution.

retroactive application violates the Retroactivity Clause involves a two-step analysis. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 27. A court must first determine, as a threshold matter, whether the General Assembly expressly indicated its intent that the statute apply retroactively. *Id.*; *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 8; *State v. Gregoire*, 12th Dist. Butler No. CA2019-04-066, 2020-Ohio-415, ¶ 10. If not, the statute may not be applied retroactively. *White* at ¶ 27, citing R.C. 1.48 ("[a] statute is presumed to be prospective in its operation unless expressly made retrospective"). However, if the General Assembly expressly indicated its intention that the statute apply retroactively, a court must move to the second step of the analysis and "determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden." *Id. See also State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 10; *State v. Cook*, 83 Ohio St.3d 404, 410-411 (1998).

*1. Intent of General Assembly to Apply Sierah's Law Retroactively*

{¶ 23} The presumption that the violent-offender enrollment statutes apply prospectively may be overcome only upon a "clearly expressed legislative intent" that the statutes apply retroactively. *State v. Caldwell*, 1st Dist. Hamilton No. C-130812, 2014-Ohio-3566, ¶ 16, citing *Walls* at ¶ 10. R.C. 2903.42 provides that enrollment in the violent offender database is presumed for all violent offenders, and R.C. 2903.41(A) defines a "violent offender" as:

> (1) A person who *on or after the effective date* of this section is convicted of or pleads guilty to any of the following:
>
> (a) A violation of section 2903.01 [aggravated murder], 2903.02 [murder], 2903.03 [voluntary manslaughter], 2905.01 [kidnapping] of the Revised Code or a violation of section 2905.02 [abduction] of the Revised Code that is a felony of the second degree;
>
> (b) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (A)(1)(a) of this section.

> (2) A person who *on the effective date of this section* has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense.

(Emphasis added.)

{¶ 24} The enrollment requirements, therefore, expressly apply to any violent offender who "on the effective date * * * has been convicted or pleaded guilty" to a specified violent offense and is confined for that offense. R.C. 2903.41(A)(2). The enrollment requirements also apply to any person who "on or after the effective date * * * is convicted or pleads guilty" to a specified violent offense. R.C. 2903.41(A)(1). Both scenarios necessarily incorporate criminal conduct occurring prior to the effective date of the statutes. As the General Assembly plainly intended the enrollment requirements to apply to conduct occurring before the statutes' effective date, we conclude that the statutes are retroactive.

*2. Retroactive Application – Sierah's Law is Remedial*

{¶ 25} Having determined that the General Assembly intended for Sierah's Law to apply retroactively, we next analyze whether the statutes are remedial or substantive in nature. As the Ohio Supreme Court has recognized, "'retroactivity itself is not always forbidden by law.'" *White*, 2012-Ohio-2583 at ¶ 31, quoting *Bielat v. Bielat*, 87 Ohio St.3d 350, 353 (2000). "[T]here is a crucial distinction between statutes that merely apply retroactively (or 'retrospectively') and those that do so in a manner that offends [the Ohio] Constitution." *Bielat* at 353. "A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively." *Id.* at 354, citing *Cook*, 83 Ohio St.3d at 411. However, a substantive statute – one that "impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations or liabilities as to a past transaction" – offends the constitution and may not be applied

- 10 -

retroactively. *Id.*

{¶ 26} Not every past occurrence, however, results in a blanket prohibition against future legislation. *Caldwell*, 2014-Ohio-3566 at ¶ 22. The Ohio Supreme Court has frequently recognized that "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality." *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281 (1988). *See also Bielat* at 357; *Cook* at 412. The commission of a felony is not a past transaction that creates a reasonable expectation of finality. *White* at ¶ 43. Therefore, "[e]xcept with regard to constitutional protections against ex post facto laws, * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." *Matz* at 281-282.

{¶ 27} The supreme court appeared to depart from the principle that the commission of a felony does not create an expectation of finality in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374. *See Caldwell* at ¶ 23. In *Williams*, the supreme court was presented with the question of whether Senate Bill 10's sex-offender registration requirements, stemming from Ohio's implementation of the federal Adam Walsh Act, were unconstitutionally retroactive. *Williams* at ¶ 7. Prior supreme court opinions had upheld the retroactive application of earlier versions of the sex-offender registration scheme. *See Cook*, 83 Ohio St.3d at 409; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824. However, in *Williams*, "[w]ithout considering whether the offenders affected by the changes had a vested right or a 'reasonable expectation of finality' in their registration status, the [supreme] court concluded that the changes rendered the statutory scheme so punitive that they constituted 'new burdens, duties, obligations, or liabilities as to a past transaction.'" *Caldwell* at ¶ 23, quoting *Williams* at ¶ 20. The supreme court, therefore, held that Senate Bill 10's sex-offender registration provisions were unconstitutional if applied retroactively. *Williams* at ¶ 21.

{¶ 28} The supreme court's decision in *Williams* "is hard to reconcile with the court's previous pronouncements that the commission of a felony does not create a reasonable expectation of finality." *Caldwell* at ¶ 24. "Perhaps it is best understood by saying that, in *Williams*, the court simply found the scheme so punitive that it amounted to a violation of the Ohio Constitution, notwithstanding the court's prior jurisprudence on criminal acts and the expectation of finality." *Id.*

{¶ 29} Following *Williams*, the supreme court "returned to analyzing retroactive legislation under the familiar framework of whether the retroactive application of a new law burdened a vested right or a reasonable expectation of finality." *Id.* at ¶ 25, citing *White*, 2012-Ohio-2583. In *White*, the supreme court was tasked with examining the constitutionality of R.C. 2929.06(B), a statute providing that where an offender's death sentence has been set aside, the trial court must empanel a new jury and conduct a new penalty hearing. *White* at ¶ 2. The newly enacted law replaced the rule articulated in *State v. Penix*, 32 Ohio St.3d 369 (1987), which held that where a death sentence imposed by a jury had been vacated for a penalty-phase error, the trial court could not empanel a new jury to impose a new death sentence, but was instead required to impose a sentence of life incarceration. *White* at ¶ 5. The defendant in *White* argued that because his crime took place prior to the enactment of R.C. 2929.06(B), he was entitled to be resentenced under *Penix*. *Id.* at ¶ 12.

{¶ 30} The supreme court disagreed, finding that the retroactive statute was remedial, rather than substantive in nature. *Id.* at ¶ 48. In so holding, the court first considered whether R.C. 2929.06(B) increased the punishment for the offense. *Id.* at ¶ 32. The court found that the new law did not increase the punishment for the underlying crime as the death penalty was available at the time of the defendant's crime and at the time of resentencing. *Id.* at ¶ 33. The court then considered whether the defendant had a vested or accrued right to

be sentenced under *Penix*. *Id.* at ¶ 34-35. The court defined an "accrued right" as a "right that is ripe for enforcement" and is not "dependent for its existence upon the action or inaction of another." *Id.* at ¶ 35, citing *Black's Law Dictionary* 1436 (9th Ed.2009) and *Hatch v. Tipton*, 131 Ohio St.3d 364, 368 (1936), paragraph two of the syllabus. The court concluded that R.C. 2929.06(B) did not impair any accrued right, as the defendant's alleged right to be resentenced under *Penix* could not have vested until his original sentence was invalidated – which was well after the enactment of the statute. *Id.* at ¶ 37.

{¶ 31} Finally, the court considered whether the newly enacted statute imposed a new burden on the defendant. *Id.* at ¶ 38-44. The court found that R.C. 2929.06(B) did not impose a new burden on the defendant as he had the burden of defending against the death penalty at the time of his first trial. *Id.* at ¶ 41. The court went on to explain that even if R.C. 2929.06(B) had imposed a new burden, there had to be some showing that the burden impacted a past transaction that created some reasonable expectation of finality. *Id.* at ¶ 42, citing *Matz*, 37 Ohio St.3d at 281. The court reaffirmed the principle that "'the commission of a felony' is not a transaction that creates a reasonable expectation of finality.'" *Id.* at ¶ 43, quoting *Matz* at 281. The court held that "[b]ecause [the defendant] could have no reasonable expectation of finality with respect to [being sentenced under] *Penix* on the date of the murder, retroactive application of R.C. 2929.06(B) to [the defendant's] resentencing d[id] not create a new burden 'in the constitutional sense.'" *Id.* at ¶ 44, quoting *Matz* at 281. Accordingly, as "the application of R.C. 2929.06(B) to [the defendant's] resentencing would not increase [his] potential sentence, impair any of [his] vested or accrued rights, violate any reliance interest or any reasonable expectation of finality, or impose any new burdens on him," the supreme court concluded that "R.C. 2929.06(B) [was] remedial, not substantive." *Id.* at ¶ 48.

{¶ 32} Applying the analysis utilized in *White*, we find that Sierah's Law is remedial,

rather than substantive, in nature. The violent-offender enrollment statutes do not increase the punishment for the specified violent offenses of aggravated murder, murder, voluntary manslaughter, kidnapping, or abduction as a second-degree felony. Rather, classification as a violent offender and enrollment into the violent offender database "is a collateral consequence of the offender's criminal acts rather than a form of punishment per se." *Ferguson*, 2008-Ohio-4824 at ¶ 34. *See also Caldwell*, 2014-Ohio-3566 at ¶ 30-35 (finding that classification as an arson-offender and registration in the arson-offender registry was a collateral consequence of committing an arson offense and that retroactive application of the arson-offender registration scheme did not violate the Retroactivity Clause of the Ohio Constitution). The only additional penalty faced by a violent offender is the penalty triggered by the offender's commission of a new crime – the failure to enroll in the database, re-enroll in the database, or notify the sheriff of a change of address. *See, e.g., Cook*, 83 Ohio St.3d at 421 (noting that any punishment that flows from a defendant's failure to register as a sex offender under R.C. 2950.99 was "a new violation of the statute" and did not flow from a past sex offense"); *Caldwell* at ¶ 31 (noting that the only additional penalty faced by an arson offender flowed from the arson-offender's commission of a new crime – failing to register). Additionally, appellant does not claim, nor does he have, a vested right in not being subject to violent-offender enrollment requirements at the time he committed the offense. *Id.*

{¶ 33} As the supreme court reiterated in *White*, "'[e]xcept with regard to constitutional protections against ex post facto laws * * *, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation.'" *White*, 2012-Ohio-2583 at ¶ 43, quoting *Matz*, 37 Ohio St.3d at 281-82. At the time he committed murder, appellant could not have had any reasonable expectation of finality with respect to the absence of any postconviction regulation. Retroactive application of the violent-offender enrollment statutes, therefore, does not "create a new burden 'in the constitutional sense.'"

- 14 -

*Id.* at ¶ 44, quoting *Matz* at 281.  *See also Caldwell* at ¶ 32.

{¶ 34} Furthermore, a comparison of the violent-offender enrollment statutes to the sex-offender registration statutes set forth in R.C. Chapter 2950 demonstrate that the violent-offender enrollment requirements are not so punitive that they comprise a new burden as to past felonious conduct.  *See, e.g., Caldwell* at ¶ 33-34 (comparing the arson-offender registration requirements to the sex-offender registration requirements under R.C. Chapter 2950 and concluding that the arson-offender registration statutes are not punitive, despite some similarities in the statutes).  Although the violent-offender enrollment statutes, like the sex-offender registration statutes, have been placed within R.C. Title 29, Ohio's criminal code, and the failure to register under either scheme subjects the offenders to criminal prosecution, there are significant differences between the two registration schemes.  For instance, under R.C. Chapter 2950, "[s]ex offenders are no longer allowed to challenge their classifications as sex offenders because classification is automatic depending on the offense * * * [and] [j]udges can no longer review sex-offender classifications."  *Williams*, 2011-Ohio-3374 at ¶ 20.  Conversely, while there is a presumption that a violent offender who commits the offense of aggravated murder, murder, voluntary manslaughter, kidnapping, or abduction as a second-degree felony will be required to enroll in the violent offender database, an offender is provided with the right to present evidence before a judge to rebut the presumption of enrollment.

{¶ 35} Additionally, sex offenders must register as frequently as 90 days and must register in as many as three different counties – those in which they reside, work, and attend school.  *See Williams* at ¶ 14.  Conversely, a violent offender need only register annually in the county in which the offender resides.  R.C. 2903.43(C)(1) and (D)(1).  The public nature of the sex-offender registry also differs significantly from that of the violent-offender database. Community notifications under the sex-offender registry "expanded to the extent

that any statements, information, photographs, or fingerprints that an offender is required to provide are public record and much of that material is now included in the sex-offender database maintained on the Internet by the attorney general." *Williams* at ¶ 14, citing R.C. 2950.081. Conversely, the violent-offender database is only accessible by federal, state, and local law enforcement officers and the database is not a public record. R.C. 2903.43(F)(2). The sex-offender statutes also impose restrictions on where an offender is permitted to reside. *Williams* at ¶ 14, citing R.C. 2950.031. Violent offenders, on the other hand, are not subject to any residential restrictions.

{¶ 36} The type of criminal prosecution an offender is subject to for failing to register in the sex-offender registry or for failing to enroll in the violent offender database are also significantly different. The failure to enroll in the violent offender database constitutes a fifth-degree felony, which carries a presumption of community control. R.C. 2903.43(I)(2); R.C. 2929.13(B)(1). Conversely, the failure to register as a sex offender as required by Chapter R.C. 2950 constitutes a felony of the same degree as that of the underlying sexually oriented offense. R.C. 2950.99. This means that if a sex offender committed a first-degree felony sex offense and the offender fails to register as required by Chapter R.C. 2950, that failure constitutes another first-degree felony and carries with it a potential indefinite prison term of 11 to 16.5 years. R.C. 2950.99(A)(1)(a); R.C. 2929.14(A)(1)(a); R.C. 2929.144 (B)(1).

{¶ 37} Given the many differences between the sex-offender registration statutes and the violent-offender enrollment statutes, we find that the violent-offender enrollment requirements are not so punitive that they impose a new burden in the constitutional sense, as contemplated in *Williams*. Rather, we find that the violent-offender enrollment requirements are more akin to the arson-offender registration requirements set forth in R.C. 2909.13, 2909.14, and 2909.15, which the First District found were remedial in nature. *See Caldwell*, 2014-Ohio-3566 at ¶ 33-35. Accordingly, as appellant had no expectation of finality

with regard to any duties that may or may not have attached following his conviction for murder, he does not have a substantive right in this regard. *See id.* at ¶ 35; *Cook*, 83 Ohio St.3d at 414. The violent-offender enrollment statutes are remedial in nature, and the General Assembly could retroactively impose Sierah's Law without running afoul of Article II, Section 28 of the Ohio Constitution. Appellant's first assignment of error, is therefore, overruled.

## C. Application of Sierah's Law to Appellant

{¶ 38} As it does not offend the Ohio Constitution to apply the violent-offender enrollment statutes retroactively, the next question we must answer is whether the statutes apply to appellant. In his second assignment of error, appellant argues that the trial court "erroneously determined that [he] was required to register with the violent offender database." We find no merit to appellant's argument.

{¶ 39} Appellant pled guilty to murder on March 7, 2019. Thirteen days later, on March 20, 2019, Sierah's Law became effective. At the time the law became effective, appellant was in jail awaiting sentencing for the murder offense.[5] R.C. 2903.41(A)(2) specifically provides that "[a] person who on the effective date of [the statute] * * * has been convicted of or pleaded guilty to * * * [a murder] offense * * * and is confined in a jail, workhouse, [or] state correctional institution * * * serving a prison term, term of imprisonment, or *other term of confinement for the offense*" is a violent offender, subject to enrollment in the violent offender database in accordance with R.C. 2903.42. (Emphasis added.) As appellant pled guilty to murder and was confined in jail awaiting sentencing for the offense at the time Sierah's Law became effective, appellant is subject to the violent-offender enrollment

---

5. Although the trial court set a cash or surety bond on October 9, 2018, it does not appear from the record that appellant was able to make bond. Appellant therefore remained in jail from the time of his arrest until he was sentenced on April 30, 2019 and transferred to a state correctional facility.

statutes. *See* R.C. 2903.41 and 2903.42. Appellant's sentence is not contrary to law and the trial court did not err in determining that appellant was required to register with the violent offender database upon his release from prison.[6] Appellant's second assignment of error is, therefore, overruled.

### III. CONCLUSION

{¶ 40} Having found appellant's assignments of error to be without merit, we hereby affirm appellant's sentence for murder.

{¶ 41} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

---

6. Appellant does not challenge, and we therefore need not decide, whether the trial court had a duty to provide the violent-offender enrollment notification at sentencing or whether doing so was unnecessary given the requirement that a violent offender classified under division (A)(2) of R.C. 2903.41 be provided with the notification by the official in charge of the prison where the offender is confined prior to the offender's release from confinement. *See* R.C. 2903.42(A)(1)(a) and (b). *See also Caldwell*, 2014-Ohio-3566, ¶ 36-40 (finding that there was no prejudice in a trial court's decision to notify the defendant of his obligations under the arson-offender registration statutes, even though the court was not required to do so, as the court's decision to provide the notification did not discharge prison representatives of their notification duties).