[Cite as *State v. Rike*, 2020-Ohio-4690.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190401 |
| | | TRIAL NO. B-1700875 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| JONATHAN RIKE, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 30, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mylanda J. Machol,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}    Jonathan Rike appeals his convictions, after a jury trial, for attempted murder with a gun specification and improperly handling firearms in a motor vehicle.  Rike contends that the trial court erred by allowing the amendment of the improperly-handling-firearms-in-a-motor-vehicle charge, his trial counsel provided ineffective assistance, he was denied a fair trial due to prosecutorial misconduct, the convictions  were not supported by sufficient evidence and were against the manifest weight of the evidence, the trial court erred by imposing multiple sentences on allied offenses and in ordering consecutive sentences, and the Violent Offender Registry violates the Ex Post Facto Clause and the Retroactivity Clause.

{¶2}    We agree that the trial court erred in amending the charge of improperly handling firearms in a motor vehicle, and we vacate that conviction and remand the cause for further proceedings.  We affirm the trial court's judgment in all other respects.

Factual and Procedural Background

{¶3}    Jonathan Rike was charged with attempted murder with three gun specifications, one for having a firearm, one for brandishing the firearm, and one for discharging a firearm, felonious assault with the same three specifications, and improperly handling firearms in a motor vehicle for transporting a loaded firearm that was accessible to him without leaving the vehicle.  Rike initially entered a not-guilty plea, but after he was found incompetent, he entered a plea of not guilty by reason of insanity.  That plea was later withdrawn, and he proceeded to a jury trial.

{¶4}    On the morning of the trial, the state made an oral motion to amend the improperly-handling-firearms-in-a-motor-vehicle charge.  The state argued that the amendment was due to a scrivener's error.  Specifically, the state contended that

2

the indictment charged Rike with a violation of R.C. 2923.16(B), which prohibits transporting a loaded weapon that was accessible, but Rike should have been charged with violating R.C. 2923.16(A) for knowingly discharging a firearm while in a motor vehicle. The state further argued that Rike would not be prejudiced because he was on notice that the state had charged him with discharging a firearm, and the amendment was previously discussed with Rike's counsel.

{¶5} Counsel for Rike objected on the ground that the amendment was not to correct a scrivener's error because it changed the offense from transporting a firearm to discharging a firearm. The trial court granted the motion to amend, and the trial began.

{¶6} Daniel Jarvis testified that he was driving his daughter Gracy and her friend Alynn to choir practice on the morning of February 11, 2017. He was driving northbound on I-75 at approximately 6:45 a.m. The traffic was very light that morning, and he was driving in the high speed lane. A silver BMW was in front of him in the center lane. As he approached to pass the car, the car swerved into his lane, so he took his foot off the gas to avoid hitting the car. Then the car swerved back into the center lane. Jarvis continued forward, and as he was passing the BMW, he heard a loud sound like a cabinet door slamming. Alynn, who was sitting in the backseat on the passenger side of the car, said, "That guy just shot at us."

{¶7} Jarvis called 911, and continued driving toward his exit. As he was approaching the exit, he was in the right lane, and the BMW passed him. He was able to get the license plate number. His daughter also took photos of the car and license plate. The driver of the BMW gave him a dirty look. Once he exited from the highway, he pulled over to see if there was any damage to his car. He did not see

anything, so he took the children to Princeton High School and waited for an officer to arrive. He examined the car more closely and found that a bullet had hit the passenger's side door handle.

{¶8} Gracey, who was seated in the front passenger seat, testified that after her father suddenly slowed the car, she looked over at the car, and she saw the driver roll down the window. A person pulled out a gun and shot at them. She felt the bullet hit the car. She watched as he pointed the gun toward the car, and she saw the barrel of the gun. The cars were side-by-side when the gun was fired. She saw the man, then she saw the gun, and then she heard the shot. She was 13 years old at the time of the shooting.

{¶9} Allyn, who was in the back passenger seat, testified that the other driver's window was lined up with hers. She saw him roll down the window, pull out a gun, and shoot the car. He looked to be in his early 40's and was bald, and had a "mean expression" on his face. It looked like he was aiming for the back of the car. She stated that the gun was in his right hand, and his left hand was on the steering wheel. He reached over, with half of his arm out the window. He was looking at the car with a very angry expression, with his gun aimed at car the entire time. She saw a black handgun. He looked very angry when they pulled off the highway. She was 14 years old at the time of the shooting.

{¶10} Sergeant Christopher Lind, a Lockland police officer, responded to the school. He viewed the victim's car and the photos of the car and plate, and determined that the registered owner was Jonathan C. Rike. He alerted the Ohio State Highway Patrol ("OSHP"), and received a notification 20-25 minutes later that OSHP had the vehicle stopped on I-75 in Springboro. He drove there and met with

Trooper Hickey who had placed Rike in his patrol car. Hickey advised that a gun lockbox was in the back seat, and he found a Smith and Wesson .380-caliber bodyguard firearm, semiautomatic, on the front passenger seat. The gun had a six-capacity magazine, and when he removed the magazine, he found four bullets in the magazine and one loaded in the chamber. He also found hollow point bullets.

{¶11} Lind transported Rike to the Hamilton County Justice Center. During the transport, Rike was annoyed and repeatedly denied shooting at anyone. Rike told Hickey a semi-truck tried to run him off the road, so he waved his gun out the window. Lind reviewed an Ohio Department of Transportation video, but the shooting was not on the video. He did not see any trucks on the video either. Rike told Lind that he had been run off the road before by semi-trucks, and he had filed a police report at Xenia Police Department. Lind could not find any police reports.

{¶12} Lind testified that Rike's gun had a long trigger pull and would have to be pulled back "pretty far" to fire. He further stated that firearms with a long trigger pull require a conscious effort to fire.

{¶13} Criminalist Emily Weber testified that Rike's hand tested positive for gunshot residue.

{¶14} Ben Jeschke, a forensic scientist at the Hamilton County Coroner's Office crime lab, testified that the bullet retrieved from Jarvis's car was fired from Rike's gun. He also testified that the gun has a recoil when fired, and the gun is difficult to fire because it has a five-to-ten pound trigger pull.

{¶15} After the state rested, defense counsel and the state engaged in an off-the-record sidebar. Afterwards, the trial court put on the record that the parties had agreed to reserve the defense motions until the end of trial.

{¶16} Rike was the sole witness for the defense. He stated that he had bipolar disorder with psychotic features that had been undiagnosed for the past five years. On the morning of the offense, a Swift 18 wheeler truck impinged on his lane twice. Rike then sped up, but a car driven by a young, white man was immediately on his bumper. After the truck incident, Rike had put his gun on the floorboard and then into the console. The gun was loaded, cocked, and the safety was off.

{¶17} After the encounter with the car following him too closely, Rike put the gun in his lap. Then he put the gun in his left hand, and pointed it out the window at the second car. He testified that he accidentally fired the gun because he was focused on traffic because it was heavier than usual. Initially, he testified that he never saw the Jarvis vehicle, but later stated that he looked in his rear-view mirror at the Jarvis vehicle. He admitted that he had his gun out the window, but testified that he did not intend to fire.

{¶18} On cross-examination, he stated that he did not recall swerving into the fast lane. He admitted that he had not previously mentioned a Swift truck or the two lane impingements. Rike said that he forget to mention the second car because he knew he accidentally discharged the firearm. He realized that he had fired the gun when it happened, and he immediately looked to his left and only saw a concrete embankment. Rike testified that he was in a heightened state of anxiety, and he did not have time to call 911, but he also testified that he did not think to call 911.

{¶19} After the incident with the truck, Rike rolled down his window. He stated that he did not see the Jarvis vehicle until after he fired the gun. He further testified that Jarvis glared at him and gave him an angry look before Jarvis exited from the highway. After Rike testified, the defense rested. Counsel for Rike

referenced the earlier sidebar, and moved for an acquittal pursuant to Crim.R. 29(A) without any argument. The trial court treated the motion as if it had been made at the close of the state's case and overruled the motion.

{¶20} The jury found Rike guilty of all charges, and the trial court sentenced him to 11 years' incarceration for the attempted murder, one year on the first gun specification to be served prior to and consecutively to the 11 years, and 18 months' incarceration on the improper handling of a firearm to be served consecutively to the attempted-murder sentence.

### The Amendment Improperly Changed the Identity of the Offense

{¶21} In his first assignment of error, Rike asserts that the trial court erred by allowing the state to amend the improperly-handling-firearms charge in violation of Crim.R. 7(D). Specifically, he contends that the amendment changed the identity of the offense charged. Whether an amendment changed the identity of the crime is a question of law that we review de novo. *State v. Kittle*, 4th Dist. Athens No. 04CA41, 2005-Ohio-3198, ¶ 12.

{¶22} Crim.R. 7(D) states, in relevant part:

The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

{¶23} A trial court commits reversible error when it permits an amendment that changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. *Kittle* at ¶ 12. "Under Crim.R. 7(D), a change in the name or identity of the charged crime occurs when an indictment is amended so that

7

the offense alleged in the original indictment and the offense alleged in the amended indictment contain different elements requiring independent proof." *State v. Dukes*, 3d Dist. Allen Nos. 1-02-64, 1-02-92 and 1-02-93, 2003-Ohio-2386, ¶ 10.

{¶24} In *Dukes*, the defendant was charged with kidnapping in violation of R.C. 2905.01(A)(1), which provides "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage." *Id.* at ¶ 7. The state amended that charge to a violation of R.C. 2905.01(A)(4), which states "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." *Id.* at ¶ 8.

{¶25} Although the amendment did not change the name of the offense, the Third District Court of Appeals found that the identity of the offense was changed because each section required proof of different elements. *Id.* at ¶ 10. Accordingly, the amendment violated Crim.R. 7(D), and the conviction was vacated. *Id.* at ¶ 10, 22.

{¶26} Similarly, this court concluded that:

Where an indictment alleged a taking of property 'without' the owner's consent (R.C. 2913.02(A)(1)), and the trial court permitted an amendment of the indictment so that it alleged a taking 'beyond' the owner's consent (R.C. 2913.02(A)(2)), there was a change in the

identity of the crime charged in contravention of Crim.R. 7(D),
requiring reversal and discharge of the defendant.

*State v. Woody*, 29 Ohio App.3d 364, 505 N.E.2d 646 (1st Dist.1986).

{¶27} In this case, the defendant was initially indicted under R.C.
2923.16(B), which states: "No person shall knowingly transport or have a loaded
firearm in a motor vehicle in such a manner that the firearm is accessible to the
operator or any passenger without leaving the vehicle." The charge was amended to
a violation of R.C. 2923.16(A), which states: "No person shall knowingly discharge a
firearm while in or on a motor vehicle." Although the name of the offense did not
change, the subsections contain different elements, and therefore the amendment
changed the identity of the crime. *See id.*; *Dukes* at ¶ 10.

{¶28} Accordingly, we sustain the assignment of error, vacate the conviction
and remand the cause for further proceedings consistent with this opinion.

## Ineffective Assistance of Counsel

{¶29} In his second assignment of error, Rike alleges that his trial counsel
was ineffective for failing to challenge a juror for cause, for requesting the court to
reserve ruling on his motion for a judgment of acquittal, for failing to request an
instruction on accident, and for failing to object to the prosecutor's closing remarks.

{¶30} To prevail on an ineffective-assistance-of-counsel claim, Rike must
show that trial counsel's performance fell below an objective standard of
reasonableness, and he was prejudiced as a result. *Strickland v. Washington*, 466
U.S. 668, 687-688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to
demonstrate prejudice, Rike must establish that, but for counsel's errors, there is a
reasonable probability that the result of trial would have been different. *State v.*

*Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6.  The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim.  *See Strickland* at 697.

### 1. Failure to Challenge a Juror for Cause

**{¶31}** During voir dire, defense counsel reiterated that the state had the burden to prove that Rike was guilty beyond a reasonable doubt.  He further explained to the jury that even though they may disapprove of Rike's conduct, they must find him not guilty if the state failed to prove he purposefully fired the shots.  When counsel asked the jurors if they all agreed with that, none of the jurors disagreed.  Then, the following exchange occurred between defense counsel and a prospective juror:

> **Mr. Keller:** So the case is not about, that any criminal case is not about, it's not about whether you like the man sitting over here at the end of all this.
>
> You may think - - I hope you don't - - but you may think that he's a pretty miserable excuse for a human being.
>
> But you also don't think that he knowingly did the acts that amount to the crime, what's your verdict?
>
> [Prospective Juror], what's your verdict?
>
> **Prospective juror:** Repeat that, sir?
>
> **Mr. Keller:** At the end of the case, do you think that Mr. Rike is a pretty miserable excuse for a human being?

But you also think that the prosecutor has not proven to you that he knowingly did felonious assault or attempted murder, what's your verdict?

**Prospective juror:** Guilty.

**Mr. Keller:** Why?

**Prospective juror:** It's not right to be shooting at people on the expressway.

**Mr. Keller:** Okay. But do you understand - - let me try somebody else, then.

{¶**32**} Courts have consistently declined to "second-guess trial strategy decisions" or impose "hindsight views about how current counsel might have voir dired the jury differently." *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932. (1982). "[C]ounsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy*, 91 Ohio St.3d 516, 539, 747 N.E.2d 765 (2001).

{¶**33**} To satisfy Strickland's first prong, Rike must demonstrate that defense counsel's performance was objectively unreasonable in light of counsel's failure to further question or strike the juror at issue. *State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, 149 N.E.3d 475, ¶ 25. To establish prejudice, Rike " 'must show that [a] juror was actually biased against him.' " *Id.*, quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001).

{¶**34**} Based upon a review of the entire voir dire, counsel may have concluded that the juror simply misunderstood the question. All of the jurors,

including juror Ledford, agreed that they could be fair and impartial, and that they would follow the court's instructions. Before and after the juror's response, defense counsel repeatedly explained the state's burden of proof, and all of the jurors agreed that the state had to prove the required culpability. Moreover, Rike cannot establish that he was prejudiced because he has not shown that the juror was actually biased against him, and the record does not support an actual-bias claim.

### 2. Reservation of Motion for Judgment of Acquittal

{¶35} At the end of the state's case, Rike's counsel and the prosecutor agreed to reserve any defense motions until the end of trial. At the close of trial, defense counsel moved for an acquittal pursuant to Crim.R. 29(A), and the trial court treated the motion as if it had been made at the close of the state's case. The court overruled the motion.

{¶36} Crim.R. 29(A) states that "[t]he court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case." Generally, a trial court's failure to immediately rule on a Crim.R. 29(A) motion for an acquittal is reviewed for harmless error. *State v. Martauz*, 7th Dist. Mahoning No. 08-MA-177, 2009-Ohio-3247, ¶ 42. The error is harmless if, at the time the motion for an acquittal was made, the existing evidence was sufficient to sustain the conviction. *See State v. Abu-Enjeela*, 7th Dist. Mahoning No. 11 MA 102, 2012-Ohio-6275, ¶ 18.

{¶37} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶38} Rike contends that the state failed to prove that he had a specific intent to kill. A person acts purposefully when he specifically intends to cause a certain result. *See State v. Phillips*, 1st Dist. Hamilton Nos. C-150376 and C-150378, 2016-Ohio-4672, ¶ 16; R.C. 2901.22(A). A defendant's intent may be inferred from all the surrounding facts and circumstances of the crime. *See State v. Were*, 1st Dist. Hamilton No. C-030485, 2005-Ohio-376, ¶ 180, quoting *State v. Herring*, 94 Ohio St.3d 246, 266, 762 N.E.2d 940 (2002). "[I]n an attempted-murder prosecution, a defendant's specific intent to kill another can be inferred from the defendant's shooting in the victim's direction" and is strongly corroborative of criminal purpose. *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 17-18.

{¶39} In this case, the state presented ample testimony that Rike rolled down his window as the Jarvis car approached, extended his arm out of the window, pointed his gun at the Jarvis vehicle, and fired his weapon. Sergeant Lind testified that Rike's firearm had a long trigger pull and would require a conscious effort to fire. Jeschke testified that Rike's firearm was difficult to fire because it had a five-to-ten pound trigger pull. Thus, the evidence was sufficient to infer Rike's specific intent because he fired the gun in the direction of the persons in the Jarvis vehicle. Therefore, Rike cannot establish that he was prejudiced by counsel's agreement to reserve the ruling on the motion.

### 3. Failure to Request an Instruction on Accident

{¶40} Rike next argues that his counsel was ineffective for failing to request a jury instruction on accident and did not object to the absence of the instruction.

{¶41} A trial court has broad discretion to decide how to fashion jury instructions, however, a trial court must give all instructions that are relevant and

necessary for the jury to weigh the evidence and discharge its duty as the factfinder. *See State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). "Accident is an unintentional act that denies a culpable mental state." *State v. Skeens*, 7th Dist. Noble No. 286, 2001 WL 1647210, *3 (Dec. 19, 2001). A party is entitled to an accident instruction when there is evidence presented at trial that the party acted lawfully, and the result was unintended. *See State v. Ross*, 135 Ohio App.3d 262, 276-277, 733 N.E.2d 659 (12th Dist.1999).

{¶42} A trial court errs by failing to provide a jury instruction on the accident defense when the facts of a case warrant such an instruction. *See State v. Smiley*, 8th Dist. Cuyahoga No. 03853, 2010-Ohio-4349, ¶ 16. " '[I]f [, however,] the trial court's general charge was otherwise correct, it is doubtful that this error of omission would ever satisfy the test for plain error or ineffective assistance of counsel.' " *Id.*, quoting *State v. Stubblefield*, 1st Dist. Hamilton No. C-890597, 1991 WL 1219 (Feb. 13, 1991), citing *State v. Sims*, 3 Ohio App.3d 331, 335, 445 N.E.2d 245 (8th Dist.1982). "This is so '[b]ecause the accident defense is not an excuse or justification for the admitted act,' and the effect of such an instruction 'would simply * * * remind the jury that the defendant presented evidence to negate the requisite mental element,' such as purpose. In this regard, '[i]f the jury had credited [the defendant's] argument, it would have been required to find [the defendant] not guilty * * * pursuant to the court's general instructions.' " (Internal citations omitted.) *Id.*, quoting *State v. Johnson*, 10th Dist. Franklin No. 06AP-878, 2007-Ohio-2792, ¶ 63.

{¶43} Here, the record reflects that the trial judge properly instructed the jury that the state bore the burden of proof beyond a reasonable doubt on every essential element of the offense, including the "purposely" mens rea element of

14

murder. By finding that Rike acted purposely, the jury concluded that his conduct was not an accident. Had the jury believed that Rike accidentally fired the gun, then it would have returned a not-guilty verdict. Therefore, Rike cannot establish that he was prejudiced by counsel's failure to request an accident instruction. *See id.* at ¶ 19 (explaining that "if the jury had believed Smiley's accident defense, it would have been required to find her not guilty in accord with the court's instructions as given, and hence, we find that Smiley was not prejudiced by counsel's failure to request an accident instruction.").

### 4. Failure to Object to the Prosecutor's Closing Argument

**{¶44}** Finally, Rike contends that his counsel was ineffective for failing to object to the prosecutor's closing remarks conceding that the state failed to prove a specific intent to kill, and telling the jurors that they could "solely rely upon the foreseeability that this conduct could cause death." He further alleges that the remarks were a misstatement of the law. However, that is a mischaracterization of the prosecutor's statements. The prosecutor reiterated that the jurors were required to find specific intent and explained that the purpose to act is known only to that person unless he expressed it to others. The prosecutor further explained that purpose is determined from the facts and circumstances, and that the jurors may infer the purpose from the surrounding circumstances, and repeatedly stated that the jurors were required to find specific intent in order to find Rike guilty.

**{¶45}** Because the prosecutor's remarks were not a misstatement of the law, defense counsel had no reasonable basis to object to the remarks. Therefore, Rike failed to demonstrate that his counsel was ineffective.

**{¶46}** Accordingly, we overrule the second assignment of error.

## Prosecutorial Misconduct

**{¶47}** In his third assignment of error, Rike argues that the prosecutorial misconduct during closing arguments deprived him of his constitutional rights to due process and a fair trial. As previously discussed, the prosecutor's remarks were not a misstatement of the law and were not improper. We overrule the third assignment of error.

## Omission of an Accident Instruction

**{¶48}** In his fourth assignment of error, Rike argues that the trial court committed plain error by omitting an instruction on accident. "Under the plain-error standard, we will not reverse a conviction unless, but for the error, the outcome clearly would have been different." *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 46 (1st Dist.).

**{¶49}** We have previously determined under the second assignment of error that the trial court properly instructed the jury that the state bore the burden of proof beyond a reasonable doubt on every element, including the "purposely" mens rea element of murder. Therefore, an accident instruction would not have affected the outcome of the trial, and the court did not commit plain error. *See Johnson*, 10th Dist. Franklin No. 06AP-878, 2007-Ohio-2792, at ¶ 64. The fourth assignment of error is overruled.

## Sufficiency and Manifest Weight

**{¶50}** In his fifth assignment of error, Rike contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because the state failed to prove the requisite mens rea. We note that the assignment of error is moot with respect to improperly handling firearms in a motor vehicle because we have vacated that conviction. Because we have previously

concluded that the attempted-murder conviction was based on sufficient evidence while addressing Rike's claim that his counsel was ineffective for failing to request an accident instruction, we will limit our analysis to whether the conviction was against the manifest weight of the evidence.

{¶51} When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶52} Rike basically argues that the jurors should have believed his testimony that the shooting was accidental. Both Gracey and Allyn testified that Rike rolled down his window, pointed the gun at the car, and fired. Rike admitted that he pointed a loaded gun out of the window with his finger on the trigger. Although, he denied that he had purposefully fired the gun, issues of witness credibility are for the trier of fact to resolve, and we cannot conclude that the factfinder lost its way and created a manifest miscarriage of justice. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

The Violent Offender Registry

{¶53} In his eighth assignment of error, Rike contends that the violent offender registration ("VOR") scheme set forth in R.C. 2903.41 through 2903.44 is unconstitutional as it violates Article II, Section 28 of the Ohio Constitution, which

prohibits retroactive laws.[1]  Specifically, he contends that the violent-offender statutes are unconstitutionally retroactive as they are punitive, rather than remedial in nature, and became effective after Rike committed his offense.

{¶54}  Under R.C. 2903.41(A)(1), a "violent offender" is a "[a] person who on or after the effective date" of the statute is convicted of or pleads guilty to aggravated murder, murder, voluntary manslaughter, kidnapping, abduction as a second-degree felony, or is convicted or pleads guilty to any attempt to commit, conspiracy to commit, or complicity in committing any of the previously identified offenses. R.C. 2903.41(A)(1)(a) and (b).  The statute applies to "[a] person who on the effective date of this section has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense."  R.C. 2903.41(A)(2).

{¶55}  R.C. 2903.42(A)(1) contains a presumption that each person classified as a violent offender "shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database."  The presumption may be rebutted if the person was not the principal offender in the commission of the offense.  R.C. 2903.42(A)(1).

{¶56}  Similar to the sex-offender registry, an offender must enroll personally with the sheriff of the county in which he or she resides.  R.C. 2903.43(B).  The offender must provide a full name and any alias, residence address, employer

---

[1] The Ohio Supreme Court certified a conflict on July 1, 2020, as to the following issue: "Whether Ohio's Sub.S.B. No. 231, 'Sierah's Law,' R.C. 2903.42 et seq., creating a violent offender database, which became effective March 20, 2019, violates Section 28, Article II of the Ohio Constitution, Ohio's constitutional prohibition on retroactive statutes, when retroactively applied to an offense that occurred before March 20, 2019."  *See State v. Jarvis*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568.

address, name and address of any school the offender is attending, license plate of each car owned or driven, description of any scars or tattoos, or other distinguishing marks, fingerprints, palm prints, and a photograph. R.C. 2903.43(C)(2). The offender must reenroll annually, in person, for ten years. R.C. 2903.43(D)(1). At the annual reenrollment, the offender must update any information that has changed since the prior enrollment. *Id.* However, if there is a change of address, the offender must notify the sheriff in person within three business days. R.C. 2903.43(E).

{¶57} The database is not a public record and is available to federal, state, and local law enforcement officers. R.C. 2903.43(F)(2). However, the records are open to inspection by the public with the exception of the social security number, any driver's or commercial license number, or state identification number. R.C. 2903.43(F)(3)(a). An offender who recklessly fails to enroll, re-enroll, or notify the sheriff of a change of address is guilty of a felony of the fifth degree. R.C. 2903.43(I)(1) and (2).

{¶58} Article II, Section 28 of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws * * *." Determining whether a statute's retroactive application violates the Retroactivity Clause involves a two-step analysis. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 7-9. First, a court must determine whether the General Assembly expressly indicated its intent that the statute apply retroactively. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 8. If so, the second step is to determine whether the statute is remedial or substantive. *Hyle* at ¶ 8.

{¶59} Because the legislature expressed its intent to apply the statute retroactively, we proceed to the second step. *State v. Jarvis*, 2020-Ohio-1127, ____ N.E.3d ____, ¶ 20 (5th Dist.); *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 24 (12th Dist.).

{¶60} "A purely remedial statute does not violate Section 28, Article II of the

Ohio Constitution, even if applied retroactively." *State v. Cook*, 83 Ohio St.3d 404, 411, 700 N.E.2d 570 (1998). "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." (Internal citation omitted.) *Id.* "Repeatedly, the [Supreme C]ourt has held that the commission of a felony is not a past transaction creating a reasonable expectation of finality: Except with regard to constitutional protections against ex post facto laws * * *, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." (Internal quotations and citations omitted.) *State v. Caldwell*, 2014-Ohio-3566, 18 N.E.3d 467, ¶ 22 (1st Dist.) (discussing similar language in the arson-offender-registration statutes).

{¶61} The Ohio Supreme Court has previously found that the sex-offender-registration scheme was remedial. *See Cook* at 409; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. However, in *State v. Williams*, the court found that the amendments contained in the Adam Walsh Act ("AWA") had become so punitive in nature that the scheme could not constitutionally be applied retroactively. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 20-21. This conclusion was based upon the elimination of judicial classification, the more onerous and frequent registration requirements, the requirement to register in person and in several different places, the increased duration of the registration duties, and the fact that the requirements are based solely on the offense of conviction. *Id.*

{¶62} However, the violent-offender-registration duties are far less onerous than the requirements of the AWA. First, the duty is imposed for ten years as

opposed to the AWA's 15-year, 25-year, or lifetime duty. Second, the offender is required to register once a year, with the sheriff where the offender resides. Unlike the sex-offender registry, the information is not disseminated online and is only available for inspection by the public. And violent offenders are not subject to residency restrictions. Finally, a failure-to-register offense imposes a recklessness standard as opposed to the strict-liability standard in the AWA, and any failure results in a low-level felony. Therefore, the provisions are "not so punitive that they impose a new burden in the constitutional sense, as contemplated by *Williams*[,]" and, instead, are remedial in nature. *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, at ¶ 37. We overrule the eighth assignment of error.

## Conclusion

{¶63} We sustain the first assignment of error, vacate the conviction for improperly handling firearms in a motor vehicle, and remand the cause for further proceedings consistent with this opinion. We overrule the second, third, fourth, fifth, and eighth assignments of error. Our disposition of the first assignment of error renders the sixth assignment of error challenging the multiple sentences and the seventh assignment of error challenging the imposition of consecutive sentences moot. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**MYERS** and **CROUSE, JJ.**, concur.

Please note:
   The court has recorded its own entry this date.