[Cite as *State v. Bryars*, 2024-Ohio-2765.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-11-099 |
| | : | O P I N I O N |
| - vs - | | 7/22/2024 |
| | : | |
| JEFFREY PAUL BRYARS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR40647

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

**HENDRICKSON, J.**

{¶ 1}   Appellant, Jeffrey Paul Bryars, appeals from the sentence imposed in the Warren County Court of Common Pleas following his guilty plea to obstructing official business, assault on a peace officer, and violating a protection order. For the reasons set forth below, we affirm in part, reverse in part, and remand for the limited purpose of permitting the trial court to employ the postrelease control correction procedures set forth

in R.C. 2929.191.

{¶ 2} On May 24, 2023, appellant, in violation of a civil protection order ("CPO") protecting appellant's girlfriend's two children, went to his girlfriend's house while the children were present. The police responded to the home after a neighbor reported appellant's presence. Although appellant's girlfriend denied that appellant was in the home, he was actually hiding in an upstairs bedroom. Appellant ignored officers' orders to come out of the house and barricaded the front door with an item similar to a railroad spike. The children protected by the CPO were afraid and were unable to exit the home through the front door. The girlfriend's son left the home through a first-floor bedroom window and the girlfriend's daughter exited through a second-story bedroom window, which required someone to help her down with a ladder. The police were able to eventually enter the home after using a sledgehammer on the front door.

{¶ 3} When the police tried to take appellant into custody, he resisted and had to be carried out of the residence. He was placed on his side in a police cruiser. During this process, appellant drew his knee to his chest and kicked at an officer's face, all while yelling derogatory comments at the officer.

{¶ 4} Appellant was arrested and subsequently indicted on one count of obstructing official business, a felony of the fifth degree, one count of assault on a peace officer, a felony of the fourth degree, one count of resisting arrest, a misdemeanor of the second degree, and two counts of violating a protection order, felonies of the fifth degree. Appellant initially pled not guilty to the charges and was released on bond. Appellant violated the conditions of his bond by frequenting a bar and testing positive for alcohol. His bond was revoked for a period of time before being reinstated by the trial court. Appellant's bond was revoked a second time when he tested positive for methamphetamine.

{¶ 5} On September 28, 2023, following plea negotiations, appellant pled guilty to obstructing official business, assault on a peace officer, and two counts of violating a protection order in exchange for the remaining count of resisting arrest being dismissed. The trial court engaged appellant in a Crim.R. 11(C)(2) colloquy and accepted appellant's guilty plea after finding the plea had been knowingly, intelligently, and voluntarily entered. The trial court ordered a presentence-investigative report ("PSI") and set the matter for sentencing.

{¶ 6} At the November 9, 2023 sentencing hearing, the trial court considered the information set forth in the PSI as well as statements made by the prosecutor, defense counsel, and appellant. The prosecutor asked that a prison sentence, rather than a community control sanction, be imposed on appellant as appellant had demonstrated a failure to abide by court orders. The prosecutor noted that at the time of the present offenses, appellant was on probation for previously violating the same CPO and he had made statements during jail phone calls indicating that he had no intention of abiding by the terms of the CPO as he planned to return to his girlfriend's home. Appellant had also failed to comply with the terms of his bond, testing positive for THC, methamphetamine, and alcohol.

{¶ 7} Defense counsel asked that the court impose a community control sanction on appellant, contending that appellant had violated the CPO only because he had been "confused" and was "unaware" that despite his girlfriend's invitation, he could not be at his girlfriend's home where the children resided. Defense counsel claimed that at the time appellant assaulted the police officer, appellant was "under a lot of stress" and "acted in frustration" as he did not believe he had done anything wrong in going to his girlfriend's home.

{¶ 8} Appellant then spoke to the court, denying that he had a drug problem or

- 3 -

any drug history and challenging the accuracy of his positive methamphetamine test. Appellant assured the court that he would "not return to [his girlfriend's] house under any circumstances" and indicated that he "just want[ed] to get on with [his] life."

{¶ 9} The court spoke with appellant's probation officer about appellant's positive drug screens, who advised that appellant had tested positive for THC in June 2023, alcohol in July 2023, and methamphetamine in September 2023. The court considered the facts of the underlying offenses and discussed appellant's criminal history, noting that appellant has "had some problems historically with authority." In addition to appellant's two prior convictions for violating a protection order, appellant had also been convicted of domestic violence and interfering with an arrest. The court found that appellant was not amenable to a community control sanction and sentenced him to six months in prison for obstructing official business, which was run concurrently to a 12-month prison sentence for assault on a peace officer. The court ordered 12-month prison sentences on each count of violating a protection order, which were run concurrently to each other, but run consecutively to the sentences for obstructing official business and assault on a peace officer, for an aggregate prison sentence of 24 months. Appellant's sentencing entry imposed a discretionary term of postrelease control of up to two years.

{¶ 10} Appellant appealed his sentence, raising the following assignment of error:

{¶ 11} [APPELLANT'S] SENTENCE IS CONTRARY TO LAW.

{¶ 12} Within his sole assignment of error, appellant argues his sentence was contrary to law for three reasons: (1) the trial court erred when it imposed "maximum, consecutive sentences;" (2) the trial court erred when it "failed to state that it considered the purposes and principles of sentencing at the time of sentencing;" and (3) the trial court erred when it "failed to personally address [him] as to postrelease control at the time of sentencing." We will consider each of these arguments in turn.

**Standard of Review**

{¶ 13} A felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) states that an appellate court may modify or vacate a sentence if the court finds "by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id*. "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Graft*, 2018-Ohio-2625, ¶ 8 (12th Dist.), quoting *State v. Ahlers*, 2016-Ohio-2890, ¶ 8 (12th Dist.).

**Consecutive Sentences**

{¶ 14} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the sentencing court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct

adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 15} Though a trial court must make the required findings at the sentencing hearing, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 16} Appellant concedes that the trial court made the required statutory findings at the sentencing hearing and in the sentencing entry to impose consecutive sentences. Nonetheless, he argues that the record does not support those findings and that the court erred in imposing "maximum, consecutive" sentences given the "mitigating evidence that explained [his] actions."

{¶ 17} As an initial matter, we note that the trial court did not impose "maximum, consecutive" sentences on appellant. Pursuant to R.C. 2929.14(A)(5), the maximum prison sentence permitted to be imposed on a felony of the fifth degree is 12 months. For a felony of the fourth degree, the maximum prison sentence that can be imposed is 18 months. R.C. 2929.14(A)(4). While the trial court imposed the maximum sentence of 12 months on each of appellant's fifth-degree convictions for violating a protection order, the court only imposed a 6-month prison term for his fifth-degree conviction for obstruction official business and a 12-month sentence for his fourth-degree conviction for assaulting a peace officer. The court elected not to run all of these sentences consecutively to one another, but instead only ran the concurrent 12-month sentences for violating a protection order consecutively to the concurrent 6-month sentence for obstructing official business

and 12-month sentence for assaulting a police officer, for an aggregate prison term of 24-months.

{¶ 18} Furthermore, contrary to appellant's arguments, the record supports the trial court's consecutive sentencing findings. Appellant's criminal record, his failure to abide by prior sanctions, and his jail statements indicating that he did not intend to abide by the terms of the CPO all provide support for the trial court's findings that consecutive sentences are necessary to protect the public from future crime, R.C. 2929.14(C)(4), and that appellant's history of criminal conduct demonstrated a need for consecutive sentences to protect the public from future crime, R.C. 2929.14(C)(4)(c).

{¶ 19} The record likewise supports the trial court's findings that consecutive sentences were not disproportionate to the seriousness of the offender's conduct or the danger the offender poses to the public. R.C. 2929.14(C)(4). The trial court discussed the present offenses, noting that appellant had entered his girlfriend's home when the girlfriend's two children were present, in direct contradiction to the terms of the CPO. Appellant then hid from the police, barricaded the door, and ignored multiple orders to exit the home. The children were forced to climb out bedroom windows to escape the home, with one child climbing out a second-story window and needing assistance down a ladder. Once the police breached the home, appellant resisted cooperating with the police and kicked an officer in the face while shouting derogatory words at the officer. As the trial court noted, appellant's conduct escalated the situation and "went too far. That's the problem, it went too far. A little too much history." Given the seriousness of appellant's conduct and his history of violating the CPO, the court found a single sentence would be "demeaning to the seriousness" of the crime. Or stated another way, consecutive

sentences were not disproportionate to the seriousness of the offender's conduct.[1]

{¶ 20} Accordingly, we find that the trial court's consecutive sentence findings made pursuant to R.C. 2929.14(C)(4) were not clearly and convincingly unsupported by the record. Appellant's argument that the trial court erred by imposing "maximum, consecutive sentences" is without any merit.

**R.C. 2929.11 and R.C. 2929.12**

{¶ 21} Appellant next argues that his sentence is contrary to law because the trial court "failed to indicate at the sentencing hearing that it considered the principles and purposes of R.C. 2929.11 as well as the factors listed in R.C. 2929.12." However, it is well established that "a trial court is not required to expressly cite to R.C. 2929.11 or 2929.12 at the sentencing hearing." *State v. Motz*, 2020-Ohio-4356, ¶ 43 (12th Dist.), citing *State v. Crank*, 2016-Ohio-638, ¶ 8 (12th Dist.). "There is also 'no language contained in R.C. 2929.11 which require[s] the trial court to make any specific findings as to the purposes and principles of sentencing.'" *State v. Watkins*, 2021-Ohio-163, ¶ 49 (12th Dist.), quoting *State v. Kane*, 2020-Ohio-5152, ¶ 11 (5th Dist.). Similarly, nothing in R.C. 2929.12 requires a trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000-Ohio-302. All that is required is the trial court "consider" the relevant statutory factors set forth in R.C. 2929.11 and 2929.12 prior to issuing its sentencing decision. *State v. King*, 2019-Ohio-1492, ¶ 9

---

1. We reiterate that the trial court was not required to use the exact language set forth in the sentencing statute when making findings under R.C. 2929.14(C)(4). *See State v. Bonnell*, 2014-Ohio-3177, ¶ 37 (stating that a sentencing court is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry"); *State v. Downing*, 2024-Ohio-381, ¶ 16 (12th Dist.); *State v. Metz*, 2024-Ohio-1635, ¶ 12 (12th Dist.). "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

(12th Dist.). S*ee also State v. Magallanes*, 2014-Ohio-4878, ¶ 21 (3d Dist.) ("[a]lthough it is required to consider R.C. 2929.11 and 2929.12, the trial court is not required to use specific language regarding its consideration of those statutes").

{¶ 22} The record is clear that the trial court considered the requisite sentencing factors set forth in both R.C. 2929.11 and 2929.12 prior to issuing its sentencing decision in this case. Consideration of these factors led the court to determine that appellant was not amenable to a community control sanction. Though the court did not expressly cite to R.C. 2929.11 and R.C. 2929.12 during the sentencing hearing, the court specifically stated in its sentencing entry that it had

> considered the purposes and principals of sentencing in R.C. § 2929.11, the seriousness and recidivism factors in R.C. § 2929.12, and all other relevant sentencing statutes.
>
> . . .
>
> The Court finds the Defendant is not amenable to an available community control sanction and that a prison sentence is consistent with the purposes and principles of R.C. § 2929.11. The Court finds a prison sentence is necessary to adequately punish the Defendant and protect the public from future crime because the applicable factors under R.C. § 2929.12 indicating a greater likelihood of recidivism outweigh the applicable factors indicating a lesser likelihood of recidivism. Further, a community control sanction would demean the seriousness of the offense because one or more factors under R.C. § 2929.12 indicate that the Defendant's conduct was more seriousness than conduct normally constituting the offense and outweigh the factors indicating the conduct was less serious than conduct normally constituting the offense.

{¶ 23} As the record reflects that the trial court properly considered the principles and purposes of felony sentencing as well as the seriousness and recidivism factors when imposing appellant's sentence, we find no merit to his argument.

**Postrelease Control**

{¶ 24} Finally, appellant argues that his sentence is contrary to law because the

trial court imposed a discretionary term of postrelease control of up to two years in the sentencing entry without "personally address[ing] [him] as to postrelease control at the time of sentencing."

{¶ 25} Pursuant to R.C. 2929.19(B)(2)(e),

> if the sentencing court determines at the sentencing hearing that a prison term is necessary, the court shall . . . [n]otify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section.

The court must also notify the offender that if postrelease control is violated, "the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term." R.C. 2929.19(B)(2)(f). R.C. 2967.28(F)(3) in turn provides that "a prison term that is imposed as a post-release control sanction . . . shall not exceed nine months, and the maximum cumulative prison term for all violations under this division shall not exceed one-half of the definite prison term that was the stated prison term originally imposed on the offender  . . . ."

{¶ 26} In the present case, the record reflects that the trial court did not address postrelease control at the sentencing hearing, other than to say that "postrelease control is incorporated into the sentencing that we addressed at the plea." The court did, however, include a complete postrelease control notification in appellant's sentencing entry.

{¶ 27} At appellant's plea hearing, postrelease control was addressed as follows:

> THE COURT: This carries postrelease control. That is – that means if you were to go to prison you would be subject to supervision upon release. If you violated the terms of

postrelease control, the adult parole authority could send you back for nine months per violation up to a total of one-half your stated sentence. Are you aware of that?

[Appellant]: Yes, Your Honor.

THE COURT: If you are convicted of a new felony during that period of supervision, the court that handles the new felony case can revoke the postrelease control, impose whatever time is remaining or one year if you have less than a year remaining. Do you understand, sir?

[Appellant]: Yes, Your Honor.

THE COURT: That would be served prior to or consecutive to any penalty on the new criminal case. Do you understand?

[Appellant]: Yes.

In addition to the foregoing discussion, the change of plea form signed by appellant advised appellant that he was subject to discretionary postrelease control of up to two years, as well as the consequences of violating postrelease control.

**{¶ 28}** The state argues that the trial court's failure to address postrelease control during the sentencing hearing does not result in reversible error given the notification provided during the plea hearing and the information set forth in the change of plea form. In support of this argument, the state relies on *State v. Tucker*, 2008-Ohio-1067 (5th Dist.) and *State v. Banks*, 2015-Ohio-5372 (10th Dist.).

**{¶ 29}** In *Tucker*, the trial court provided postrelease control notifications during the plea hearing but not at sentencing. Instead, at sentencing, the trial court referred to the postrelease control notification provided during the plea hearing and sought an acknowledgement of that notification from counsel, who confirmed it was provided at the plea. *Tucker* at ¶ 18-20. The court then stated it would not further review postrelease control. However, the court did include in Tucker's sentencing entry a proper postrelease control notification. *Id.* at ¶ 17. Almost a decade later, Tucker challenged the postrelease

control notification and argued he should be resentenced. The trial court denied appellant's motion for resentencing and the Fifth District affirmed the trial court's decision, stating the following:

> The present case thus does not present a scenario in which appellant received no verbal post release control notification. Instead, the trial judge originally advised him of said obligation in open court approximately one month before the sentencing hearing, which was itself postponed due to the court's desire to obtain a presentence investigation report. . . . We hold the trial court in the case sub judice, via the combination of the December 1998 plea hearing and January 1999 sentencing hearing colloquies, substantially complied with the statutory requirement to notify appellant of his PRC obligation and did not deprive appellant of due process.

*Id.* at ¶ 30.

{¶ 30} In *Banks*, the defendant was provided a full postrelease control notification during his plea hearing, he signed a change of plea form that contained a postrelease control notification, and his sentencing entry included a proper postrelease control notification. *Banks* at ¶ 4. However, at the sentencing hearing, the only mention of postrelease control by the trial court was when it addressed the defendant's counsel and requested that counsel "please notify your client of post-release control in writing." *Id.* at ¶ 19. More than five years after he was sentenced, Banks filed a motion for resentencing based on a void judgment, arguing that the court failed to properly notify him of postrelease control. The trial court denied the motion and the Tenth District affirmed the trial court's decision after concluding that strict compliance with the postrelease control statutes, R.C. 2929.19(B) and 2967.28, was not necessary. *Id.* at ¶ 18. Rather, the court applied a "totality of the circumstances" test and concluded that when the various oral and written notifications, including those provided during the plea hearing, informed a defendant of postrelease control, there was no reversible error. *Id.* The court held as follows:

> While the trial court's notification to Banks did not strictly comply with the terms of the statutes, the trial court did include the mandatory three years of post-release control when it sentenced Banks in its judgment entry and it did take some steps to place Banks on notice about the nature of his post-release control obligations. Under the totality of the circumstances, we find that the trial court sufficiently notified Banks of the term of post-release control.

*Id.* at ¶ 20.

{¶ 31} *Tucker* and *Banks* were decided prior to the Supreme Court's decision in *State v. Bates*, 2022-Ohio-475. In *Bates*, the court unequivocally stated, "[i]t is established that 'a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing.'" *Id.* at ¶ 11, quoting *State v. Jordan*, 104-Ohio-6085, ¶ 23, *overruled on other grounds by State v. Harper*, 2020-Ohio-2913. "The trial court must advise the offender at the sentencing hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control." *Id., citing State v. Grimes*, 2017-Ohio-2927, ¶ 11. In light of the Supreme Court's decision in *Bates* and the express language of R.C. 2929.19(B)(2)(e) and (f), we find that the postrelease notifications must be provided during the sentencing hearing. We join those appellate districts that have held that "[n]otice of postrelease control at the plea hearing and in the sentencing entry does not correct the trial court's failure to impose a term of postrelease control at the sentencing hearing." *State v. Nascembeni*, 2022-Ohio-1662, ¶ 12 (8th Dist.); *State v. Davis*, 2022-Ohio-2373, ¶ 12 (2d Dist.).

{¶ 32} As the trial court failed to properly impose postrelease control at the sentencing hearing, we sustain appellant's assignment of error in part, reverse his sentence and remand the case for the limited purpose of permitting the trial court to employ the postrelease control correction procedures set forth in R.C. 2929.191. In all

other respects, the judgment of the trial court is affirmed.

{¶ 33} Judgment affirmed in part, reversed in part, and the matter remanded.


S. POWELL, P.J., and M. POWELL, J., concur.