[Cite as *State v. Wu*, 2025-Ohio-1138.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-027 |
| | : | O P I N I O N |
| - vs - | | 3/31/2024 |
| | : | |
| XIUMING WU, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR40819


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Craig Newburger, for appellant.


**HENDRICKSON, J.**

{¶ 1}  Appellant, Xiuming Wu, appeals from his conviction and sentence in the Warren County Court of Common Pleas for kidnapping, aggravated burglary, felonious assault, retaliation, and aggravated arson. For the reasons set forth below, we affirm in part, reverse in part, and remand for the limited purpose of permitting the trial court to employ the postrelease control correction procedures set forth in R.C. 2929.191.

{¶ 2}　In May 2023, appellant was facing sexual assault charges in New York for offenses committed against X.L. X.L. had obtained a restraining order against appellant and traveled to Springboro, Ohio. Appellant, who was not held in jail on the New York charges, paid an individual to drive him from New York to Springboro so that he could "find his girlfriend." The driver brought appellant to Springboro, but after appellant started talking about hurting and "beating" his girlfriend, the driver became uncomfortable and stopped providing transportation to appellant. However, the driver ordered appellant an Uber ride.

{¶ 3}　On May 11, 2023, appellant traveled to the home X.L. was staying at on Lownes Court. At approximately 6:45 p.m., X.L. heard a window break at the back of the house. X.L. went to check on the window and when she opened the blinds, she saw appellant standing outside with a metal crowbar in his hand, trying to pry open the window. X.L. ran to the garage, got in her vehicle, and locked the vehicle's doors. X.L. heard banging on the outside of the closed garage door. Shortly after the banging stopped, appellant entered the garage from an interior door to the house. Appellant started banging on the outside of the car with the crowbar. X.L. tried to open the garage door using a remote. Appellant broke out a window on the passenger side of the car and started to reach through the window to unlock the car door. X.L. began to drive the car back and forth and, after succeeding in partially opening the garage door, she drove out of the garage. Appellant followed X.L. out of the garage, but upon seeing neighbors who had gathered outside, he ran back into the residence before ultimately fleeing the scene.

{¶ 4}　The police were unable to locate appellant that night. The following evening, appellant returned to X.L.'s home and set fire to the residence. The home was engulfed in flames by the time the first responders arrived on scene. The fire spread to the two homes that were immediately adjacent to X.L.'s home, causing a substantial risk of

serious harm to the homes' occupants.

{¶ 5} Officers were unable to locate appellant the evening of the fire. Appellant fled back to New York, where he was arrested on May 24, 2023. Appellant was subsequently indicted on the following 17 counts in the Warren County Court of Common Pleas:

- one count of kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree (count one);

- one count of kidnapping in violation of R.C. 2905.01(A)(3), a felony of the second degree (count two);

- one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree (count three);

- one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree (count four);

- one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree (count five);

- one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree (count six);

- two counts of retaliation in violation of R.C. 2921.05(B), felonies of the third degree (counts seven and seventeen);

- five counts of aggravated arson in violation of R.C. 2909.02(A)(1), felonies of the first degree (counts nine through thirteen);

- three counts of aggravated arson in violation of R.C. 2909.02(A)(2), felonies of the second degree (counts fourteen through sixteen); and

- one count of violating a protection order in violation of R.C. 2919.27(A)(3), a misdemeanor of the first degree

- 3 -

(count eight).

{¶ 6} Appellant initially pled not guilty to the charges. However, on March 7, 2024, following plea negotiations, appellant agreed to plead guilty to kidnapping as set forth in count one, aggravated burglary as set forth in count three, felonious assault as set forth in count five, retaliation as set forth in count seven, and six counts of aggravated arson as set forth in counts nine through fourteen in exchange for the state dismissing the remaining charges. Appellant and the state agreed that the bill of particulars would serve as the recitation of facts for the offenses.

{¶ 7} Appellant, who did not speak English, was provided with an interpreter. Utilizing the interpreter, the trial court conducted a Crim.R. 11 plea colloquy. The trial court accepted appellant's guilty pleas upon finding the pleas were knowingly, intelligently, and voluntarily entered. The court set the matter for sentencing and ordered that a presentence-investigative report (PSI) be prepared.

{¶ 8} On April 29, 2024, appellant filed a sentencing memorandum in which he argued his kidnapping, aggravated burglary, retaliation, and felonious assault charges should all be merged together as allied offenses of similar import as the offenses were committed against the same victim, did not result in separate identifiable harm, occurred on the same date, and involved a "single scheme to find and assault the victim." Appellant further argued that all of the arson offenses should be merged into one arson offense as the indictment and bill of particulars referenced the same date, time, and location.

{¶ 9} Appellant, accompanied by his counsel and an interpreter, appeared before the court for sentencing on May 14, 2024. At that time, the state and appellant presented their opposing arguments regarding whether appellant's offenses should be merged as allied offenses. Contrary to the position taken by appellant, the state maintained the kidnapping, aggravated burglary, retaliation, and felonious assault charges amounted to

- 4 -

"separate and identifiable acts" that were dissimilar in import, thereby permitting separate sentences on each offense. The state further argued that the various arson offenses should not be merged.

{¶ 10} The trial court found that the arson offenses merged together, but the kidnapping, aggravated burglary, retaliation, and felonious assault charges did not merge. The court sentenced appellant to eight years in prison on the kidnapping charge, to a minimum definite prison term of 10 years to a maximum indefinite prison term of 15 years under Reagan Tokes on the aggravated burglary charge, to eight years in prison on the felonious assault charge, and to 36 months in prison on the retaliation charge—all run concurrently to one another but consecutively to an eight-year prison term imposed on the aggravated arson charge in count nine, for an aggregate sentence of a minimum 18 years to a maximum of 23 years in prison. Appellant was advised he was required to register with the Violent Offender Database and the Arson Offender Registry and was further advised that his sentence "includes the postrelease control we talked about at the plea hearing."

{¶ 11} Appellant timely appealed his conviction and sentence, raising four assignments of error. For ease of discussion, we address appellant's third assignment of error before addressing his second assignment of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY ACCEPTING HIS GUILTY PLEA AND FINDING HIM GUILTY WHEN THE RECITATION OF FACTS AT THE PLEA HEARING DID NOT ESTABLISH ANY PROOF OF FACTS THAT HE HAD COMMITTED THE INDICTED CRIMES.

{¶ 14} In his first assignment of error, appellant argues that his guilty plea was invalid as the state's recitation of the facts failed to provide a sufficient factual basis to

satisfy the elements of the offenses and to establish venue. Appellant maintains that his plea was, therefore, not knowingly and intelligently made.

{¶ 15} "A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision." *State v. Clark*, 2008-Ohio-3748, ¶ 25. To that end, "[b]ecause a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter [such] a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "'Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶ 16} Crim.R. 11(C) governs the process a trial court must follow to ensure that a guilty plea or no contest plea to a felony charge is knowing, intelligent, and voluntary. *State v. Hawkins*, 2023-Ohio-2915, ¶ 7 (12th Dist.). It provides, in relevant part, as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against

- 6 -

him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

{¶ 17} The Supreme Court addressed a trial court's compliance with Crim.R. 11(C) and how an appellate court should review a trial court's plea colloquy in *State v. Dangler*, 2020-Ohio-2765. The Court held that, in general, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. "However, there are two exceptions to this rule: (1) when the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest and (2) 'a trial court's complete failure to comply with a portion of Crim.R. 11(C).'" *Hawkins* at ¶ 9, quoting *Dangler* at ¶ 15. Under either of those circumstances, the defendant is not required to show prejudice. *Dangler* at ¶ 14-16. "That is to say, when either of those two exceptions apply, the defendant need not establish that his or her guilty plea 'would [not] have otherwise been made.'" (Brackets in original.) *State v. Mills*, 2024-Ohio-3359 (12th Dist.), ¶ 15, quoting *State v. Leonicio*, 2023-Ohio-2433, ¶ 34 (12th Dist.). Prejudice is instead presumed to have occurred. *State v. Fabian*, 2020-Ohio-3926, ¶ 15 (12th Dist.). Prejudice, when required, "must be established on the face of the record and not solely by virtue of challenging a plea on appeal." *Hawkins* at ¶ 12.

{¶ 18} Appellant argues his guilty pleas were not valid because he was provided with an insufficient factual basis for the offenses at the plea hearing. He therefore contends that he did not have sufficient understanding of the nature of the charges, as required by Crim.R. 11(C)(2)(a). However, as this court has previously recognized, "the

- 7 -

trial court 'need not advise the defendant of the elements of the crime[]' for which he or she is pleading guilty before the trial court can find the defendant's plea was made with an understanding of the nature of the charge pursuant to Crim.R. 11(C)(2)(a)." *Mills* at ¶ 16, quoting *State v. Huston*, 2018-Ohio-2818, ¶ 19 (12th Dist.). "'[R]ather, it is sufficient if the totality of the circumstances warrant the trial court in making a determination the defendant understands the charges.'" *Huston* at ¶ 19, quoting *State v. Goens*, 2006-Ohio-4324, ¶ 10 (12th Dist.). To the extent appellant argues otherwise, his argument lacks merit.

{¶ 19} Here, the record establishes that appellant understood the nature of the charges to which he was pleading guilty. The trial court addressed appellant personally, through an interpreter, and advised appellant at the beginning of the plea proceedings as follows:

> THE COURT: Okay. All right. So, we are here today for a plea. It is my understanding that Mr. Wu is going to be entering a plea of guilty to one count of kidnapping, one count of aggravated burglary, one count of felonious assault, retaliation, five counts of aggravated arson, as a first-degree felony and one count of aggravated arson as a second-degree felony.

Defense counsel and the state added that the remaining charges were to be dismissed.

The court then indicated to appellant:

> THE COURT: You're going to be entering a plea of guilty to charges of kidnapping, aggravated burglary, and five counts of aggravated arson. These are all felonies of the first degree, punishable by up to eleven to sixteen and a half years in prison and a maximum fine of $20,000. You will be pleading guilty to felonious assault and aggravated arson. Count 14 of aggravated arson is a second-degree felony and these are both second degree felonies, [punishable] by up to eight to twelve years in prison. There is also one charge of retaliation, which is a third-degree felony, punishable up to thirty-six months in prison.

These statements were sufficient to advise appellant of the nature of the charges, as

- 8 -

required by Crim.R. 11(C)(2)(a).

{¶ 20} Furthermore, in addition to the advisements provided by the trial court, appellant had also been read the change of plea form by the interpreter and he had reviewed the form with his counsel. This form, which was signed by appellant, states, in pertinent part, that "[t]he Defendant acknowledges that he/she is proceeding voluntarily, has been fully advised of and understands the charge(s), the possible penalties and his/her constitutional rights . . . ." This form supplemented the trial court's oral advisement by detailing the offenses to which appellant was pleading guilty by including the offenses' code sections, felony levels, maximum prison terms and fines, and detailing whether a prison term was mandatory or whether there was a presumption of prison term.

{¶ 21} At the time appellant entered his guilty pleas, the parties and the court were in agreement that the bill of particulars would serve as the facts of the case. The court stated, "We have agreed in advance, that the Bill of Particulars, which I'm going to mark as Exhibit C, will serve as the facts of the case, and appellant, did the interpreter read the Bill of Particulars to you?" Appellant, through his interpreter, indicated, "Yes." The court clarified that the dismissed counts had been crossed out on Exhibit C. The remainder of Exhibit C listed the offenses to which appellant was pleading guilty, the statutory code sections that were violated, the date of the offenses, the location of the offenses ("Lownes Court, Springboro, OH 45066), and a description of the offenses. The court ensured appellant understood the facts that he was pleading guilty by asking, "Mr. Wu, do you understand the facts that are being alleged against you, those having been read to you in the Bill of Particulars by the interpreter?" Appellant, through the interpreter, responded, "Yes." Appellant further admitted that the facts were true. When asked by the court whether defense counsel had "[a]nything additional on the facts," defense counsel responded by stating, "No, Your Honor. We acknowledge they are sufficient [on] all the

elements of the alleged offenses. We acknowledge that they are sufficient to support all the necessary elements."

{¶ 22} Accordingly, based on the record before us, we find that the trial court complied with Crim.R. 11(C)(2)(a) by expressly advising appellant of the nature of the charges to which he was pleading guilty and by ensuring he understood the facts that comprised those offenses. Furthermore, contrary to appellant's arguments, the facts to which he plead guilty, as set forth in the bill of particulars, provided a sufficient basis to satisfy the elements of the offenses and to establish venue in Springboro, Warren County, Ohio.

{¶ 23} As there was not a "complete failure" by the trial court to advise appellant of the nature of the charges before he entered his pleas, appellant is required to show prejudice in order to have his pleas vacated. *Dangler*, 2020-Ohio-2765 at ¶ 16. Here, appellant has not established that he would not have pled guilty had he been provided with a more detailed oral recitation of the facts. Appellant has, therefore, failed to demonstrate prejudice. Accordingly, we find no merit to his arguments and overrule his first assignment of error. Appellant's guilty pleas were knowingly, intelligently, and voluntarily entered.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT ADVISING HIM OF HIS REQUIREMENT TO REGISTER AS A VIOLENT OFFENDER AT PLEA.

{¶ 26} In his third assignment of error, appellant argues his guilty plea was not knowingly and intelligently entered because the trial court failed to advise him during the plea colloquy that he would be required to register as a violent offender. Appellant maintains that he therefore did not know of all the penalties he faced when pleading guilty.

{¶ 27} This court previously considered and rejected a similar argument in *State v. Cross*, 2022-Ohio-2094 (12th Dist.). As we explained in *Cross*, "'classification as a violent offender and enrollment into the violent offender database is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.'" *Id.* at ¶ 8, quoting *State v. Hubbard*, 2020-Ohio-856, ¶ 32 (12th Dist.), *aff'd*, 2021-Ohio-3710. Enrollment in the Violent Offender Database, R.C. 2903.41 et seq., does not increase the punishment for the offense. *Hubbard* at ¶ 32. "Therefore, it is now well established that 'because registration requirements are collateral consequences rather than punishment, Crim.R. 11 does not require a trial court to inform a defendant of the registration and notification requirements before accepting a defendant's guilty plea.'" *Cross* at ¶ 8, quoting *State v. Baker*, 2021-Ohio-4544, ¶ 13 (12th Dist.). *Accord State v. Beard*, 2021-Ohio-2512, ¶ 53 (8th Dist.). As the trial court was not required to inform appellant of the applicable registration requirements under the Violent Offender Database before accepting his guilty plea, we find no merit to appellant's arguments and overrule his third assignment of error.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE KIDNAPPING, AGGRAVATED BURGLARY, RETALIATION, AND FELONIOUS ASSAULT CHARGES SHOULD BE MERGED.

{¶ 30} In his second assignment of error, appellant argues the trial court erred by failing to merge his convictions for kidnapping, aggravated burglary, retaliation, and felonious assault as allied offenses of similar import. Appellant maintains that the offenses merge as he was "engaged in a single scheme to find and assault the victim" and the harm suffered by the victim from the offenses was the same.

{¶ 31} "Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited." *State v. Flack*, 2024-Ohio-4622, ¶ 40 (12th Dist.). R.C. 2941.25 states:

- 11 -

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 32} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors—the conduct, the animus, and the import. *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true:  (1) the offenses are dissimilar in import or significance, (2) the conduct shows that the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 33}  As the Ohio Supreme Court has recognized, application of the allied offense test "'may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination.'"  *Id*. at ¶ 32, quoting *State v. Johnson*, 2010-Ohio-6314, ¶ 52. Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *State v. Williams*, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against

multiple punishments for a single criminal act." *State v. Lewis*, 2012-Ohio-885, ¶ 14 (12th Dist.). "A court will look to the information contained in the record to make its allied offense determination, including the indictment, bill of particulars, and the presentence investigation report." *State v. Campbell*, 2015-Ohio-1409, ¶ 18 (12th Dist.), citing *State v. Tannreuther*, 2014-Ohio-74, ¶ 16 (12th Dist.).

{¶ 34} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if . . . [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."  Here, the bill of particulars to which appellant pled guilty indicates the aggravated burglary offense was done with the purpose of committing the kidnapping offense. Pursuant to R.C. 2905.01(A)(2), an individual is guilty of kidnapping if that person, "by force, threat, or deception . . . remove[s] another from the place where the other person is found or restrain[s] the liberty of the other person . . . [t]o facilitate the commission of any felony or flight thereafter." The bill of particulars indicates the kidnapping offense was committed to facilitate the commission of the felonious assault offense. Pursuant to R.C. 2903.11(A)(2), a person has committed felonious assault if he "knowingly. . . [c]ause[s] or attempt[s] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."  Finally, appellant was convicted of retaliation in violation of R.C. 2921.05(B), which provides that "[n]o person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."

{¶ 35} Contrary to appellant's arguments, we find that the kidnapping, aggravated

burglary, retaliation, and felonious assault offenses do not merge. Utilizing the information set forth in the indictment, bill of particulars, and PSI, it is clear that though the offenses occurred close in time to one another, they were committed separately and caused separate and distinct identifiable harm to X.L. *See e.g., State v. Williams*, 2018-Ohio-4261, ¶ 11-14 (12th Dist.) (finding the offenses of aggravated burglary and kidnapping did not merge as the physical and emotional risk from being duct-taped to a chair for an unknown period of time was separate, distinct, and identifiable from the risk imposed when masked men enter a home waiving guns). As this court has previously recognized, "if one offense is completed before the other begins, the offenses are considered separately for sentencing purposes even though the . . . offenses may have been committed in close proximity in time." *State v. Fields*, 2015-Ohio-1345, ¶ 18 (12th Dist.), citing *State v. Lane*, 2014-Ohio-562, ¶ 16 (12th Dist.).

{¶ 36} First, with respect to the aggravated burglary offense, the record reflects appellant used force to trespass in X.L.'s home so that he could commit the kidnapping offense. Appellant used a crowbar to break a window to X.L.'s house in order to force entry into the home. The aggravated burglary offense was complete as soon as appellant broke the window, entered the home, and threatened injury to X.L. with the crowbar.

{¶ 37} The kidnapping offense was then committed separately, after the aggravated burglary was complete but before the felonious assault was committed. The record reflects that appellant restrained X.L.'s liberty in order to facilitate his commission of the felonious assault. After X.L. fled to the garage and locked herself in the car, appellant entered the garage and prevented X.L. from leaving the car. Appellant circled the car and began striking the car from all angles with the crowbar, leaving X.L. trapped in the car. The restraint of her liberty was significant and the psychological harm from being trapped in the car while appellant threatened her with a weapon was a different

type of harm than that caused by the other offenses.

{¶ 38} The felonious assault offense was then separately committed when appellant broke the window on the passenger side of the car and reached in the vehicle to try to unlock the door. Appellant's intention was to beat the victim—he had admitted as much to the individual who had driven him from New York to Ohio. Appellant had the crowbar in hand and knowingly attempted to cause physical harm to X.L. with the tool.

{¶ 39} Finally, with respect to the retaliation claim, the record indicates this offense was completed before appellant committed the aggravated burglary, kidnapping, and felonious assault offenses. Appellant was facing charges in New York for various sexual offenses X.L. had reported. In retaliation for X.L. filing those criminal charges, appellant followed X.L. from New York to Springboro, Ohio where he purposely and unlawfully threatened harm to her and her property by wielding a crowbar outside her home and by using the tool to damage the outside of the home, namely the window and the outside of the garage door, in an effort to get in. The retaliation offense was, therefore, complete before appellant actually trespassed in the home to complete the aggravated burglary offense and before he committed the kidnapping and felonious assault offenses. Additionally, commission of the retaliation offense caused separate and identifiable harm from the other offenses. In addition to the damage to X.L.'s property, appellant's actions in tracking down X.L., following her from New York to Ohio, and wielding a crowbar against her served as a communication from appellant that X.L. should have never filed charges against him and that he would make her pay for getting the authorities involved. Appellant's actions put X.L. in fear of going forward with her prosecution of the New York charges.

{¶ 40} Accordingly, based on the facts and circumstances of this case, we find that the aggravated burglary, kidnapping, felonious assault, and retaliation offenses were not

allied offenses as they were committed separately and created separate and identifiable harm to X.L. The trial court did not err by failing to merge appellant's convictions. Appellant's second assignment of error is, therefore, overruled.

{¶ 41} Assignment of Error No. 4:

{¶ 42} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT ADVISING HIM OF HIS POSTRELEASE CONTROL REQUIREMENT ON THE RECORD AT SENTENCING.

{¶ 43} In his fourth assignment of error, appellant argues the trial court failed to properly impose postrelease control as the court neglected to advise him of his postrelease control requirements on the record at sentencing.

{¶ 44} In appellant's sentencing entry, the court imposed a mandatory period of postrelease control of up to five years, but not less than two years. The court's sentencing entry included a complete and correct postrelease control notification. However, at the sentencing hearing, the trial court did not address postrelease control other than to say that appellant's sentence, "includes the postrelease control we talked about at the plea hearing."

{¶ 45} Referencing R.C. 2967.28, the Ohio Supreme Court has stated, "[i]t is established that 'a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing.'" *State v. Bates*, 2022-Ohio-475, ¶ 11, quoting *State v. Jordan*, 2004-Ohio-6085, ¶ 23, *overruled on other grounds by State v. Harpe*r, 2020-Ohio-2913. "The trial court must advise the offender at the sentencing hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control." *Id.*, citing *State v. Grimes*, 2017-Ohio-2927, ¶ 11.

{¶ 46} Based on our recent decisions in *State v. Bryars*, 2024-Ohio-2765 (12th

Dist.); *State v. Ward*, 2024-Ohio-2858 (12th Dist.); and *State v. Mills*, 2024-Ohio-3359 (12th Dist.), we find that the trial court failed to properly impose postrelease control when it merely stated at sentencing, without further elaboration, that it was imposing "the postrelease control we talked about at the plea hearing." This holds true even though the trial court's sentencing entry provided appellant with a complete and correct postrelease control notification. As we have repeatedly recognized, "'[n]otice of postrelease control at the plea hearing and in the sentencing entry does not correct the trial court's failure to impose a term of postrelease control at the sentencing hearing.'" *Bryars* at ¶ 31, quoting *State v. Nascembeni*, 2022-Ohio-1662 (8th Dist.). *See also Ward* at ¶ 9; *Mills* at ¶ 8. The trial court must also announce the proper postrelease control sanction at the defendant's sentencing hearing.

{¶ 47} Therefore, in accordance with this court's recent decisions in *Bryars*, *Ward*, and *Mills*, we find the trial court failed to properly impose postrelease control at appellant's sentencing hearing. Appellant's fourth assignment of error is sustained. Appellant's sentence is reversed and the matter remanded for the limited purpose of permitting the trial court to employ the postrelease control correction procedures set forth in R.C. 2929.191.

{¶ 48} Judgment affirmed in part, reversed in part, and the matter remanded.

BYRNE, P.J., and PIPER, J., concur.